## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Anthony Dyous, | ) | |
| Ling Xin Wu, | ) | |
| Vincenzo Lindia, | ) | |
| Taina Morales, | ) | |
| Carson Mueller, | ) | |
| | ) | |
| On behalf of themselves and | ) | CIVIL ACTION NO. 3:22-CV-1518-SVN |
| all other persons similarly | ) | |
| situated, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Department of Mental Health and | ) | CLASS ACTION REQUESTED |
| Addiction Services, | ) | |
| Whiting Forensic Hospital, and | ) | |
| Psychiatric Security Review Board, | ) | |
| | ) | |
| Defendants. | ) | MAY 30, 2023 |

## PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION FOR STAY

## I.    INTRODUCTION

The Motion to Stay Discovery Pending a Ruling on Defendants' Joint Motion to Dismiss (ECF No. 37) should be denied because Defendants' Motion to Dismiss fails to make a strong showing that the Plaintiffs' claims are without merit. The discovery Plaintiffs contemplate pending the Court's decision on Defendants' Motion to Dismiss would not be unduly burdensome., A stay would prejudice the Plaintiffs' claims of disability discrimination including, among other things, the right to reasonable modifications of Defendants' policies, practices and procedures so that they can receive timely assessments and individual transition planning services so that they can timely transition to and receive treatment in the most integrated setting appropriate to their needs, a civil right based on twenty-four years of well-established federal law.

The Plaintiffs filed their class action complaint on November 30, 2022 (ECF No. 1)[1], and consented to Defendants' requests for extensions to respond to Plaintiffs' Complaint (ECF Nos. 13, 18, 30, and 31).  Plaintiffs filed an Amended Complaint (ECF No. 29) on March 3, 2023.  Defendants filed their Motion to Dismiss (ECF No. 35) and Motion for Stay (ECF No. 37) on April 17, 2023.  The Court vacated all discovery deadlines and issuance of a scheduling order pending Defendants' Motion for Stay of all discovery and Defendants' Motion to Dismiss. (ECF No. 24)

The Plaintiffs' Opposition to Defendants' Motion to Dismiss is being filed concurrently with the Opposition to the Motion for a Stay of Discovery.

## II.   ARGUMENT

### A.   Motion for Stay of Discovery Standard When Motion to Dismiss is Pending

Generally, it is not the practice of the United States District Court for the District of Connecticut to stay discovery upon the filing of a motion to dismiss. *See e.g.*, *Kollar v. Allstate Ins. Co.*, No. 3:16-CV-01927 (VAB), 2017 WL 10992213, at *1 (D. Conn. Nov. 6, 2017) ("[T]his Court's regular practice normally requires the parties to commence discovery, even while a motion to dismiss is pending."); *see also, e.g.*, *Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) ("Discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed") (quotation marks omitted); *Moss v. Hollis*, No. CIV. B-90-177 (PCD), 1990 WL 138531, at *1 (D. Conn. June 29, 1990) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, they would contain such a

---

[1] On May 16, 2023, the Court, in light of Plaintiffs' Amended Complaint, denied as moot, Plaintiffs' Motion for Class Certification but granted Plaintiffs leave to file a renewed motion. Order Denying Plaintiffs' Motion for Class Certification as Moot. (ECF No. 42).

provision."). Indeed, the Court's Standing Order on Pretrial Deadlines states that "[t]he filing of a motion to dismiss shall not result in a stay of discovery or extend the time for completing discovery." (ECF No. 4.)

A "stay of discovery is the exception and not the rule in this District*," Metzner v. Quinnipiac Univ.*, No. 3:20-CV-000784 (KAD), 2020 WL 7232551, at *6 (D. Conn. Nov. 12, 2020)(Dooley, J.). Accordingly, courts in this district expect parties to move their cases forward while it considers a motion to dismiss. *See Covenant Imaging, LLC v. Viking*, No. 3:20-CV-00593 (KAD), 2020 WL 5411484 (D. Conn. Sept. 9, 2020)(Dooley, J.); and *Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:20-CV-01393 (KAD), 2021 WL 6498259 (D. Conn. March 16, 2021)(Dooley. J.)(FN 2 discussing various positions among the district courts in this district). Thus, although Federal Rule of Civil Procedure 26(c) provides, in relevant part, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including," an order "forbidding ... discovery," Fed. R. Civ. P. 26(c)(1)(A), "a request for a stay of discovery, pursuant to Rule 26(c) is committed to the sound discretion of the court based on a showing of good cause." *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, No. 3:17-CV-01765 (CSH), 2018 WL 1960112, at *2 (D. Conn. Apr. 26, 2018) (internal quotation marks omitted) (Denying Defendant's Motion for Stay). The party seeking the stay bears the burden of demonstrating good cause justifying a stay of discovery. *Id.*

[I]n determining whether good cause exists for a stay of discovery while a potentially dispositive motion is pending, courts consider three factors: "(1) the strength of the dispositive motion; (2) the breadth of the discovery sought; and (3) the prejudice a

stay would have on the non-moving party." *Lithgow v. Edelmann*, 247 F.R.D. 61, 62 (D. Conn. 2007); and *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, No. 3:17-CV-01765 (CSH), 2018 WL 1960112, at *2 (D. Conn. Apr. 26, 2018). In assessing the second factor, the Court may consider the burden of responding to discovery. *See, e.g.*, *Country Club of Fairfield, Inc. v. New Hampshire Ins. Co.*, No. 3:13-CV-00509 (VLB), 2014 WL 3895923, at *3 (D. Conn. Aug. 8, 2014).

The filing of a dispositive motion does not automatically constitute good cause for a stay of discovery. *Boost Oxygen, LLC v. Rocket Oxygen*, No. 3:16-CV-01992 (VLB), 2017 WL 10768482 at * (D. Conn. March 21, 2017) (Denying Motion to Stay Discovery).

Defendants' filing of their Motion to Dismiss does not justify a stay of discovery in this case.

**B. Defendants' Motion to Dismiss Is Not Strong**

1. <u>Standard of Review</u>

In evaluating this factor, courts look to see whether there are "substantial arguments for dismissal," or, stated differently, whether "there has been a strong showing that the plaintiff's claim" is without merit. *Stanley Works*, No. 3:17-CV-01765 (CSH), 2018 WL 1960112, at *3 (Denying Defendant's Motion for Stay) (quoting *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013); and *Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:20-CV-01393 (KAD), 2021 WL 6498259 (D. Conn. March 16, 2021) (Granting the Defendant's Motion for Stay).,

Even where a defendant makes strong arguments for dismissal, if the plaintiffs also make strong arguments in opposition to dismissal, the court must consider the

strong arguments of both sides and, in such cases, courts determine that the
defendants' arguments do not satisfy the "substantial arguments for dismissal"
requirement for a stay.  *RBG Management Corp. v. Village Super Market, Inc.*, 2023 WL
1996920, *3 (Jan. 24, 2023, S.D.N.Y.)(denying motion to stay discovery pending
decision on motion to dismiss where both sides made strong arguments in favor and in
opposition to the motion) *quoting Guiffre v. Maxwell*, No. 15-cv-07433 (RWS), 2016 WL
254932, at *2 (S.D.N.Y. Jan. 20, 2016)("With strong arguments on both sides,
Defendant's argument does not rise to a level of the requisite 'strong showing' that
Plaintiff's claim is unmeritorious.").

As explained below and as set forth in Plaintiffs' Opposition to Defendants'
Motion to Dismiss (Pltfs' Opp.), Defendants have failed to show that their Motion to
Dismiss (MTD) is strong.  At the same time. Plaintiffs' Opposition to the Defendants'
Motion to Dismiss is strong, thus necessitating the denial of Defendants' motion to stay
discovery pending the outcome of their Motion to Dismiss.

    2. <u>Review of Strength of Arguments in Defendants' Motion to Dismiss</u>

        a. *Background Section, Pages 1 – 9 of Defendants' MTD*

Defendants' Motion to Dismiss fails to make a strong showing that Plaintiffs'
claims are without merit.  At the outset, it should be noted that there are two over-
arching and recurring incorrect themes that Defendants assert in support of their MTD
that undercut their arguments.

Defendants repeatedly and incorrectly, contend throughout their MTD, that
because the Plaintiffs pled not guilty by reason of mental disease or defect (NGMDD),
this inherently means they are <u>currently</u> dangerous, that they are somehow to be

treated differently, and that they should be afforded fewer protections from disability discrimination than civilly committed patients or individuals incarcerated due to criminal convictions with respect to their rights under the ADA and Section 504.  This inaccurate reading of the law is ubiquitous throughout Defendants' MTD and contributes to the failure of their arguments in favor of dismissal of Plaintiffs' Complaint.

Defendants mischaracterize Plaintiffs and define them by their index incident[2] and mischaracterize it as a crime.  The Plaintiffs' index incidents occurred more than ten years ago and, for Mr. Dyous, 40 years ago, in 1983. *See* ECF 36, MTD, pages 5-6.

Anticipating Defendants' mischaracterization of Plaintiffs' claims and their attempt to criminalize Plaintiffs' disability, Plaintiffs' cited, at paragraph 50 of the Amended Complaint, to *Payne v. Fairfield Hills Hospital*, 215 Conn. 675, 683-84 (Conn 1990) and *State v. Damone*, 148 Conn. App. 137, 170 (2014), both cases citing to *Jones v. United States,* 463 U.S. 354, 368–69, 103 S.Ct. 3043, 3052, 77 L.Ed.2d 694 (1983):

> "As a general matter, the confinement of insanity acquittees, although resulting initially from an adjudication in the criminal justice system, is not "punishment" for a crime. "The purpose of commitment following an insanity acquittal, **like that of civil commitment**, is to treat the individual's mental illness and protect him and society from his potential dangerousness. The committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous.... As he was not convicted, he may not be punished.  His confinement rests on his continuing illness and dangerousness."

*Jones v. United States,* 463 U.S. 354, 368–69, 103 S.Ct. 3043, 3052, 77 L.Ed.2d 694 (1983)." (emphasis added.)

Defendants' attempts to characterize Plaintiffs' claims in this case as similar to

---

[2] "Index incident" is the clinical term generally used by most professionals and staff of DMHAS, Consulting Forensic Psychiatrists (CFPs), WFH and the PSRB.  That term is intentionally used in distinction to the word "crime," in recognition of the legal status of the acquittee and the fact that they have been acquitted of the charges, not convicted.

the plaintiff in *Jones v. United States* are wrong.  *Jones* was a case involving a constitutional challenge to continued involuntary commitment, not a case about systemic disability discrimination on behalf of a putative class seeking declaratory and injunctive relief resulting in changes in Defendants' policies and procedures and *not* individualized relief of any kind.  The only application of *Jones v. United States* to this caseis that it stands in part for the proposition that acquittees are *not* convicted, that the purpose of their commitment is like civilly committed persons, treatment, and that they *may not be punished*. *Jones* at 368.  Defendants characterize Plaintiffs as dangerous criminals, who have admitted their crimes and are worthy of punishment and incarceration, and who should be held in a state psychiatric hospital and have no right to treatment in the most integrated setting or other protections from disability discrimination under Title II of the ADA.  Under the law in Connecticut, however, acquittees are not criminals; that is why they were acquitted.[3]  As set forth in Plaintiffs' Opp., Defendants' arguments are wrong and do not cite to one ADA case to support such a theory. *See* Discussion in Pltfs' Opp. at pages 1 – 5.

The Supreme Court held that even persons convicted of crimes, persons who *may* be punished, are covered by Title II of the Americans with Disabilities Act. *Yeskey v. Pennsylvania Department of Corrections*, 524 U.S. 206 (1998).  Justice Scalia wrote for a unanimous Court that ". . .the statute's language unmistakably includes State

---

[3] Connecticut does not have plea of "guilty but mentally ill" as exists in some other states.  One of the basic foundations of the rule of law and due process is that a criminal defendant must have sufficient *mens rea*, the capacity necessary to form criminal intent, as an essential element of the crime. Moreover, if a defendant asserts and proves the affirmative defense of not guilty by reason of mental disease or defect, he or she is entitled to be acquitted.  An affirmative defense constitutes a separate issue or circumstance that mitigates the degree of, or eliminates, criminality or punishment.  See Connecticut Criminal Jury Instructions, 2.9.

prisons and prisoners within its coverage." *Id*. at 209. The Court further held that "State prisons fall squarely within the statutory definition of "public entity," which includes any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id.* at 210. Likewise, courts have held that qualified individuals confined to psychiatric facilities, including those confined to a forensic mental health facility such as WFH pursuant to a forensic commitment are protected from disability discrimination under Title II of the ADA.  Defendants have not, and cannot, provide any legal authority suggesting otherwise. *See e.g.*, Yeskey, 524 U.S. at 209 (making clear that Title II applies to all programs, services and activities of a state or local governmental entity "without any exception"); see also Pltfs' Opp. at 17-18. Defendants' arguments entirely miss the mark and are not strong;  they are unlikely to prevail on these arguments.

In their MTD, Defendants repeatedly mischaracterize Plaintiffs' claims and prayers for relief as seeking individualized relief in the form of "release" when in reality Plaintiffs' claims and requested relief are all systemic in nature and seek absolutely no individual relief. *See* ECF 29, Am. Complt., ¶¶ 4, Prayer for Relief, ¶ 6.a-d.  For example, Defendants misstate Plaintiffs' claims as claims for discharge from the jurisdiction of the Psychiatric Security Review Board (PSRB) and release from Whiting Forensic Hospital (WFH).  ECF No. 36, MTD at pp. 18-20 and 33-35.  None of Plaintiffs' claims, however, request discharge from the jurisdiction of the PSRB or release from WFH or DMHAS custody.  Plaintiffs have made it clear that they do *not* seek an individual order for placement for any individual acquittee and they do not challenge the validity or duration of their commitment.  Plaintiffs seek only declaratory and injunctive

relief for systemic change to ensure that Defendants comply with Title II of the ADA and Section 504 when administering their programs, services, and activities, including the application of the appropriate direct threat analysis prescribed by the ADA, and with Title's II's integration mandate. *See* ECF 29, Am. Complt., Prayer for Relief ¶¶ 6.a-d. Plaintiffs' only claims are systemic and non-individualized claims relating to their civil right to treatment in the most integrated setting while they are under the jurisdiction of the board and in the custody of the Commissioner of DMHAS and held at WFH. *See* ECF 29 Am. Complt, ¶ 4. There is no challenge running to the Superior Court over its orders for initial commitment, recommitment, or discharge from the jurisdiction of the PSRB. *See id*.

      *b.*  *Sovereign Immunity for ADA Claims, Pages 9 - 23*

Defendants are unlikely to prevail on their arguments that Plaintiffs' ADA claims should be dismissed based on sovereign immunity. Defendants do not cite to a single case holding that state psychiatric patients are barred by sovereign immunity from making a claim under Title II of the ADA against a state, state agency or any state instrumentality. Defendants rest their sovereign immunity claim on assertions that Plaintiffs have failed to state a claim under Title II of the ADA. *See* ECF 36 MTD at 11. Specifically, Defendants incorrectly argue that Plaintiffs have not, and cannot as a matter of law, allege a Fourteenth Amendment violation with respect to their ADA claims and thus their claims are barred by Eleventh Amendment sovereign immunity. *Id*. n. 3.

First, Defendants, citing to *State v. Foster*, 217 Conn. App. 476 (2023), erroneously assert that, as a matter of law, Plaintiffs cannot assert a Fourteenth Amendment claim against Defendants in the context of the ADA claims. ECF 36 MTD at

11, n. 3. In *Foster*, the Connecticut Court of Appeals rejected an acquittee's equal protection claim challenging differential treatment between civil committees and acquittees. *Id*. at 506   Defendants, however, fail to note that the Connecticut Supreme Court has granted certification to review this very question, and thus, that the decision they cite does not represent Connecticut law. *State v. Foster*, 346 Conn. 920, (April 4, 2023) (granting review on the question of whether "the Appellate Court was not similarly situated to civilly committed inmates for the purpose of deciding whether General Statutes 17a-593, as applied to the acquittee, violated his right to equal protection under the fourteenth amendment to the United States constitution.").

Defendants also overlook that there is a well-established constitutional substantive due process liberty interest in being free from involuntary confinement in a psychiatric hospital. *See e.g., Vitek v. Jones*, 445 U.S. 480 (1980) (holding that a convicted prisoner has a liberty interest in avoiding transfer to a psychiatric hospital noting that "[t]he loss of liberty by involuntary confinement is more than a loss of freedom from confinement"). Plaintiffs' claims for declaratory and injunctive relief seeking to address Defendants' systemic disability discrimination imposed on the Plaintiffs by unnecessarily segregating them and the proposed Plaintiff class clearly implicate their constitutional liberty interests.  The State's sovereign immunity has been clearly abrogated with respect to Plaintiffs' ADA and Section 504 claims.

The Defendants' sovereign immunity claims with respect to the PSRB are completely erroneous. Plaintiffs filed their Amended Complaint on March 3, 2023.  One change from the original Complaint to the Amended Complaint was that Plaintiffs dropped all Section 504 Rehabilitation Act claims against the PSRB.  Plaintiffs' only

Section 504 Rehabilitation Act claims are against DMHAS and WFH. *See* Amended

Complaint Count 7, ¶¶ 174-178 (making clear that this Section 504 claim is only against

DMHAS and WFH, not the PSRB); ¶ 188 (Count 9 is a Section 504 count against

DMHAS and WFH only).  Any arguments that Defendants have made with respect to

these now non-existent claims are irrelevant.

  The State of Connecticut filed an *amici* brief in *Tennessee v. Lane* in support of

Mr. Lane arguing that Title II of the ADA, in its entirety, was a valid abrogation of state

sovereign immunity because of a long history of constitutional violations by states

against people with disabilities in state institutions, and that Title II was a congruent and

proportional response to this long history of constitutional violations. *Tennessee v.*

*Lane*, 2003 WL 22733906 (Appellate Brief of Amici).  Defendants' sovereign immunity

arguments are not strong or substantial.

   *c.  Plaintiffs Have Pled Facts to State Claims Under the ADA and Section 504*

  As explained in their Opp.,  Plaintiffs have pled a clear *prima facie* case under

Title II: 1) she or he is a qualified individual with a disability; 2) Defendants are subject

to the ADA as public entities; and 3) she or he was, by reason of such disability,

excluded from participation in or denied the benefits of the services, programs and

activities of a public entity, or subjected to discrimination by any such entity." *Bolmer v.*

*Oliveira*, 594 F.3d 134, 148 (2d Cir 2010) and *Henrietta D. v. Bloomberg*, 331 F.3d 261

(2d Cir. 2003).

  There are several theories of liability under Title II of the ADA which a plaintiff

can raise. Plaintiffs have pled several such claims here, including integration mandate

claims (Counts 1, 3, and 4), failure to reasonably modify claims (Counts 6), and

methods of administration claims (Count 9). Plaintiffs have adequately pled their claims.

**(1) Plaintiffs' Integration Mandate (aka "Olmstead") Claims**

Among the ADA claims brought by Plaintiffs are claims under Title II's "integration mandate" as interpreted by the Supreme Court in *Olmstead v. L.C.*, 527 U.S. 581 (1999). Title II of the ADA and the Supreme Court in *Olmstead* established the right of all people in state institutions to receive treatment and services in the most integrated setting. *Id*. at 607. The right to receive services in the most integrated setting has been recognized by Defendants themselves as DMHAS policy, by the Commissioner in Commissioner's Policy 6.51 and by Whiting Forensic Hospital in WFH OPP 2.38 Community Integration.  Neither the Commissioner's policy on community integration nor WFH's OPP 2.38 exclude acquittees from the policy.

Defendants argue that Plaintiffs have not stated an *Olmstead* claim. *See* ECF 36 MTD at pp. 16-20.  Defendants argue that because Plaintiffs are not civilly committed, but are instead forensically committed under Conn. Gen. Stat. § 53a-13, this somehow means that they are not "otherwise qualified" individuals with disabilities. *See* ECF 36 MTD at 13.   Defendants offer no ADA caselaw to support this novel argument. *See id*. at pp. 13-15; *see also* Opp. at pp 17-18. They further incorrectly argue that Plaintiffs have not pled facts that their (or any) treatment providers have determined that they are appropriate for community placements and thus failure to adequately plead their Olmstead claims. As explained in Plaintiffs' Opp., Defendants' argument fails as a matter of law as there is no requirement that a plaintiff present evidence or plead facts that the state's treatment provider, or even some other provider, have recommended the person for community placement in order to bring an *Olmstead* claim. *See* Opp. at.

18-. In any event, Plaintiffs have pled facts that they are appropriate for Defendants' assessments, transitioning planning services, including temporary leave, so that they may timely participate in Defendants' community mental health service system *See* Opp. at pp. 21-22.

Likewise, Defendants' contention that Plaintiffs have failed to state an Olmstead claim because they did not allege facts that "Plaintiffs' community can be reasonably accommodated taking into account the resources available to the state and the needs of others with similar disabilities." *Olmstead,* 527 U.S. at 607. As explained in Plaintiffs' Opposition, a plaintiff need not allege such facts to state an *Olmstead* claim because the question of whether a plaintiff's needs for community placement can be met considering the resources available to the state and the needs of others with disabilities is part of a fundamental alteration *affirmative defense* for which Defendants bear the burden of proof.  It is not appropriate to dismiss *Olmstead* claims because such facts have not been pled by a plaintiff. *See Mental Disability Law Clinic v. Hogan*, No. CV–06–6320 (CPS)(JO), 2008 WL 4104460, at *15 (E.D.N.Y., Aug. 28, 2008), *citing Joseph S.,* 2008 WL 2403698, at *8 (citing cases); *see also Townsend v. Quasim,* 328 F.3d 511 518–20 ( 9th Cir. 2003) ("Although plaintiff has not alleged the placement can be reasonably accommodated, taking into account (a) the resources available to the State and (b) the needs of others with mental disabilities, it would be inappropriate to dismiss on these claims on this ground as defendants bear the burden of establishing "fundamental alteration" as a defense."). Defendants' argument is not strong.

### (2) Denial of Reasonable Accommodations/Modifications Claims

Defendants assert in their MTD that Plaintiffs did not allege facts sufficient to

sustain their claims that Defendants failed to reasonably modify their policies, procedures, and practices so that Plaintiffs can receive Defendants' services and programs in the most integrated setting appropriate to their needs.  Defendants incorrectly argue that the Plaintiffs did not allege facts that they requested reasonable modifications.  ECF 36 MTD at 17.  Yet, as Defendants acknowledge, Plaintiffs allege that their Counsel sent Defendants a detailed letter setting out for Defendants violations of the rights of the Plaintiffs and proposed class members and requesting systemic remedies to end Defendants' discriminatory practices.  ECF 29 Am. Complt., ¶ 79; *see also* ECF 36 MTD, Ex. A of Ex. 2 Cardella Aff'd.

   Defendants repeat their incorrect refrain that the accommodations Plaintiffs want are not related to their disability but instead relate to their supposed "criminal conduct." ECF 36 MTD. at 17.  This argument mischaracterizes Plaintiffs' basic circumstances and ignores U.S. Supreme Court precedent establishing that acquittees are not responsible for a crime. It seems to stem from Defendants' apparent misunderstanding that, in the context of the ADA, it does not matter that Plaintiffs are committed for involuntary treatment after pleading NGMDD as opposed to civil commitment. Individuals committed to the jurisdiction of the PSRB who are qualified individuals with disabilities, such as Plaintiffs and members of the Plaintiff class, have the same rights under the ADA as any other qualified person with a disability.

   Plaintiffs have articulated proposed systemic modifications. Plaintiffs have proposed changes to the way in which DMHAS contracts with providers to prevent them from refusing to serve individuals committed to the jurisdiction of the PSRB. *See id.*, ¶ 79; *see also* Affidavit of Vanessa Cardella, Ex. 2, filed in Support of Defendants' MTD

(ECF No. 29).  Plaintiffs also have proposed modifications to the way in which Defendant DMHAS administers its community mental health system, including increasing funding and changing its contracts.  *Id.*, ¶¶ 73, 74-77. They also ask the Court to order Defendants to comply with federal disability anti-discrimination law. ECF 29 Amended Complt, ¶ 6. Such modifications are both appropriate and required under Title II.  *See Mary Jo C. v. N. Y. State and Loc. Ret. Sys.*, 707 F. 3d 144, 163-65 (2013); *see also* Opp. at 25.

Defendants also appear to erroneously assert that *Olmstead* and Title II's integration mandate, as well as other provisions of the ADA, do not apply to Plaintiffs and members of the proposed Plaintiff class because of the legal status of being involuntarily committed pursuant to an NGMDD plea.  *See* ECF No. 36 Defs' MTD at 14

Defendants also incorrectly assert that Plaintiffs have not pled any facts about the specifics of their disabilities.  That too is inaccurate. Plaintiffs, as detailed in their Opposition to the MTD, have set forth facts describing their disabilities. See Opp. at pp. 18-19, fn. 7, *see also* ECF No. 29 Am. Complt., ¶¶ 7-9 and 31-44.

Defendants' contentions with respect to Plaintiffs' reasonable modification claims are unlikely to succeed.

**(3) Plaintiffs' Methods of Administration Claims**

Defendants also assert that Plaintiffs have failed to state a claim for violations of the ADA under a "methods of administration" theory of liability.  ECF No. 36 MTD at 22. Under this theory, a plaintiff can allege disability discrimination under the ADA when a public entity administers its programs in a manner that results in unjustified segregation of persons with disabilities. A public entity may violate the ADA's integration mandate

when it: (1) directly or indirectly operates facilities and or/programs that segregate individuals with disabilities; (2) finances the segregation of individuals with disabilities in private facilities; and/or (3) through its planning, service system design, funding choices, or service implementation practices, promotes or relies upon the segregation of individuals with disabilities in private facilities or programs. See *U.S. Dept. of Justice Guidance on Enforcement of the Integration Mandate of Title II of the ADA and Olmstead*.  Contrary to Defendants' assertions, Plaintiffs' allegations clearly include facts more than sufficient to state a method of administration claim under the ADA. Plaintiffs allege: "Defendants have developed and utilize criteria and methods of administration of Connecticut's mental health system, including the PSRB, that have a tendency and effect [of] subjecting the Plaintiffs and the members of the Plaintiff Class to unnecessary and unjustified segregation on the basis of their disability by, *inter alia*, failing to reasonably modify Defendants' service system to avoid discrimination against qualified acquittees with mental health disabilities in violation of 42 U.S.C.§12132 and 28 U.S.C. §35.130(b)(3)."  ECF No. 29 Amended Complt., ¶¶ 73-77,181-82, 183(a)-(d); see also Pltfs' Opp. at pp. 26-27.

**(4) Habeas Corpus**

Defendants' claim that Plaintiffs' sole remedy is through a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 is without merit. *See* Pltifs. Opp, Section  VI at pp. 27-32.  Defendants mischaracterize Plaintiffs' claims as demanding release from custody. Plaintiffs are <u>not</u> demanding release from custody. Plaintiffs are not challenging the Superior Court's initial order of commitment to the jurisdiction of the PSRB. Plaintiffs are not requesting an order of discharge from the jurisdiction of the

PSRB or release from this Court. Plaintiffs seek only systemic, non-individualized, relief. Pltfs' Opp. at pp. 31-32.  Instead, they seek reasonable modifications to Defendants' transition services and the DMHAS's methods of administering its community mental health service system so that there is sufficient capacity in the community to allow Plaintiffs  and the proposed Class to move at a reasonable pace to the most integrated setting appropriate to their needs.

### (5) Standing

Defendants' assertion of lack of standing is without merit.  Defendants assert that Plaintiffs have not pled any facts asserting an Article III injury-in-fact.  ECF 36 MTD at 35. The ADA and *Olmstead* make it clear that unnecessary institutionalization and segregation in state institutions is discrimination.  State action unnecessarily confining, segregating and institutionalizing a person with a disability in a state psychiatric hospital subjects that person to discrimination and the inherently harmful and injurious effects of institutionalization.  The Court in *Olmstead* stated:

> Recognition that unjustified institutional isolation of persons with disabilities is a form of discrimination reflects two evident judgments. First, institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life. Cf. *Allen v. Wright,* 468 U.S. 737, 755, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ("There can be no doubt that [stigmatizing injury often caused by racial discrimination] is one of the most serious consequences of discriminatory government action."); *Los Angeles Dept. of Water and Power v. Manhart,* 435 U.S. 702, 707, n. 13, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) (" 'In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.' ") (quoting  *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194, 1198 (C.A.7 1971)). Second, confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment. See Brief for American Psychiatric Association et al. as *Amici Curiae* 20–22. Dissimilar treatment

17

correspondingly exists in this key respect: In order to receive needed medical services, persons with mental disabilities must, because of those disabilities, relinquish participation in community life they could enjoy given reasonable accommodations, while persons without mental disabilities can receive the medical services they need without similar sacrifice. See Brief for United States as *Amicus Curiae* 6–7, 17.

*Olmstead v. L.C. by Zimring*, 527 U.S. 581, 600-601 (1999).

Plaintiffs have suffered Article III injury-in-fact in that they are unnecessarily institutionalized and segregated from the community, family, friends, churches, schools, work opportunities and the freedom of living in the community and receiving mental health services and supports in the community.

**(6) Mootness**

Contrary to Defendants' assertions in their Motion to Dismiss, Plaintiffs' claims are not moot because the legislature slightly modified the standard for decisions regarding temporary leave and conditional release. The legislature retained the public safety mandate for the PSRB. The legislature did not require the Defendants to ensure that DMHAS, WFH and the PSRB provide their programs, services, activities and treatment in the most integrated setting. The legislature added considerations of the "safety and wellbeing of the acquittee" to considerations for temporary leave and conditional release.  "Safety and wellbeing of the acquittee" is not a standard under the ADA. It does not require the Defendants to apply the reasonable modification/most integrated setting standards under the ADA or require the direct threat analysis of the ADA before determining that a person is a direct threat and therefore not qualified to participate in their programs, services, or activities or to provide services in the most integrated setting. *See* Opp. at pp. 37-38.  Defendants' assertion that Plaintiffs' claims are all moot are weak and insubstantial.

18

### (7) *Younger* Abstention

This Court should not abstain from hearing this case under the abstention doctrine in *Younger v. Harris*, 401 U.S. 37 (1971), as Plaintiffs do not ask this Court to "interfere" with any state proceeding, including Defendants' review and oversight of commitment and integration. *See* MTD at 41. *Younger* abstention should be used rarely and only in narrow exceptional circumstances. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013) ("Circumstances fitting within the *Younger* doctrine, we have stressed, are "exceptional"). Specifically, under the *Younger* abstention doctrine, federal courts should only abstain from deciding cases in "exceptional circumstances" including: (1) 'ongoing state criminal prosecutions," (2) "certain civil enforcement proceedings," and (3) "civil proceedings involving certain orders uniquely in furtherance of the state's ability to perform their judicial functions." *Falco v. Justices of Matrimonial* Parts of Supreme Court of Suffolk Co., 805 F.3d 425, 428 (2d Cir. 2015), *quoting* Sprint Communications, 571 U.S. at 73. This case does not warrant *Younger* abstention as it does not fall into any of the three *Sprint* exceptions. Defendants claim that, if granted, the relief sought by Plaintiffs would result in the Court's interference in the PSRB's ability to carry out its duties as required by state law. MTD at 44.  However, Plaintiffs here bring federal disability discrimination claims under Title II of the ADA and the Rehab Act seeking exclusively systemic relief—not individualized relief and not release. None of the relief sought by Plaintiffs in this case would result in any "interference" with the PSRB's proceedings or any state court proceeding or an "audit" of any such proceeding.  Any relief ordered by this Court would not prevent the PSRB from carrying out its duties as set forth in state law. *See* Opp. at p. 39.  The relief sought by Plaintiffs,

if ordered, would require that the Defendants, including the PSRB, "apply state statutes and laws, policies and methods of administration in a manner that complies with Title II of the ADA and Section 504, including a requirement that each Plaintiff and Class member receives treatment and services in the most integrated setting and, ensure that where in conflict, that federal anti-discrimination law control over state law." Am. Complt., ¶ 6.a. Compelling Defendants to comply with a prophylactic federal disability anti-discrimination law can hardly be said to be an unlawful "interference" or "audit" of any state court proceeding and can be an appropriate remedy to avoid disability discrimination. *See Mary Jo C.*, 707 F. 3d at 163 ("We conclude that the ADA's reasonable modification requirement contemplates modification reasonable modification where to state laws, thereby permitting preemption of inconsistent state laws, when necessary to effectuate Title II's reasonable modification provision"); see also Pltfs' Opp. at 39. This is particularly true given "the broad scope and purpose of the ADA." *Id*. at 162.

Defendants also argue that the third exception articulated by the Supreme Court in *Sprint* — "civil proceedings involving certain orders uniquely in furtherance of the state's ability to perform their judicial functions" —is met because they have an important state interest in administering the state's criminal justice system and protecting the public. MTD at 44. While Defendants have interest in administering their criminal justice system and keeping the public safe, those interests are in no way impeded if the Court were to retain jurisdiction in this case, since the relief sought by Plaintiffs is not individualized and does not seek release. Again, Plaintiffs simply ask that this Court order Defendants to comply with the ADA and Section 504.

20

Finally, the relief that Plaintiffs seek—all of which is systemic, non-individualized— cannot be obtained in Plaintiffs' PSRB administrative proceedings or, for that matter, in their Superior Court forensic commitment proceedings.  While the PSRB can make *individual* determinations with respect to whether an acquittee can receive community services while under its jurisdiction and recommendations to the Superior Court regarding release, nothing in the statute allows it to hear class wide, non-individualized Title II ADA and Section 504 claims, such those raised by Plaintiffs in this case. *See generally*, Conn. Gen. Stat., §§17a-580 -17a-603.

Defendants note that it is ultimately up to the Connecticut Superior Court whether to release an acquittee from the jurisdiction of the PSRB. MTD at 43. That does not support *Younger* abstention in this case. Plaintiffs have asserted no claims or requests for relief against the Connecticut Superior Court. Nothing in their Complaint implicates, or interferes with, the Court's ability to carry out its statutory authority to commit (§ 17a-582) and discharge (§ 17a-593) acquittees. Thus, *Younger* abstention need not, and should not, be applied to preserve the Connecticut Superior Court's prerogatives in these matters.

### C.  Second Stanley Works Factor: The Breadth of Discovery Sought

In considering whether to grant a stay pending the decision on a motion to dismiss, courts also consider the breadth of discovery sought/burdensome. *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, No. 3:17-CV-01765 (CSH), 2018 WL 1960112, at *2 (D. Conn. Apr. 26, 2018).  Courts have found that a stay of discovery is not warranted in cases where the discovery sought was limited *Id.* at 3; and *Covenant Imaging, LLC* v.

*Viking Rigging & Logistics, Inc.* No. 3:20-CV-00593 (KAD), 2020 WL 5411484, at 2 (D. Conn. Sept. 9, 2020).

Here, Plaintiffs have not yet propounded any discovery. In the Report of the Parties Planning Meeting, ECF No. 21, filed on January 24, 2023, over three months ago, Plaintiffs listed a number of potential subjects for discovery,[4]  Plaintiffs at this time propose that the Court allow the parties to engage in *limited* phased discovery. Specifically, Plaintiffs respectfully request that the Court order the parties to exchange initial disclosures pursuant to F.R.C.P. 26(a), grant plaintiffs authority to propound some limited document requests relating to non-electronically stored documents, and order the parties to agree on and submit a global protective order for the handling of records of the named Plaintiffs and the proposed Plaintiff Class in the possession of DMHAS, WFH and the PSRB.  Once that discovery is done, if the Court has ruled on the Defendants' Motion to Dismiss, the parties should be required to proceed with discovery in accordance with the Court's ruling.  If the Court has not ruled, the parties will meet

---

[4] ) Named Plaintiffs; 2) Named Defendants; 3) Numbers of patients and their legal status by WFH Unit; 4) Privilege level and current PSRB Memorandum of Decision (MOD) for each class member; 5) WFH practice and procedure for risk assessment in the Forensic Review Committee (FRC); 6) Communication between and among DMHAS/WFH/PSRB regarding each Named Plaintiff and class member; 7) DMHAS contracts for all community mental health providers who provide community mental health services to acquittees; 8) Development by DMHAS of forensic community mental health services; capacity of such services; monitoring of capacity for such services; maintenance and utilization management of such services; and wait lists and delays in access to such services by acquittees whose MOD authorizes a temporary leave ("TL") or conditional release ("CR"), including such services; 9) Funding requests and allocations for such services, and related information; 10) WFH's Privilege Level system; 11) Recommitment process, including, but not limited to, communication between Defendants and Defendants and the state's attorney; 12) Defendants' implementation, practice, procedure and methods of administration regarding P.A. 22-45 provisions regarding movement to Dutcher, TL and CR; 13) Defendants' methods of administration of the PSRB regarding conditions of release with respect to TL and CR; 14) Plaintiffs' and Plaintiff Class's right to services in the most integrated setting; 15) Risk assessment by Defendants and "direct threat" as defined in the ADA and US DOJ ADA and Section 504's regulations; 16) Cost of forensic community mental health services; 17) Budget development for forensic community mental health services, including requests from any Defendant to OPM/Governor; 18) Defendants' conduct that is generally applicable to the class as a whole; and, 19) other discovery proportional to the needs of the case based upon Defendants' Answers and/or facts discovered during the pendency of discovery in this

and confer and propose more limited discovery in the form of agreed search terms for production of electronic discovery and production of documents. This limited and phased in and coordinated discovery will not burden the Defendants and balances rights and interests of the parties.

### D.  Prejudice to the Plaintiffs as Non-moving Parties

A complete stay on all discovery pending the Court's decision on the motion to dismiss would cause unnecessary delay and is overbroad.  Initial disclosures, initial paper discovery, initial electronic discovery/search term negotiations, and the protective order may well take several months and match up to the Court's ruling on the motion to dismiss.  As discussed above, it is unlikely that the Court will grant any part of the Defendant's Motion to Dismiss.  The prejudice to the Plaintiffs includes delay and ongoing disability discrimination including ongoing denial of treatment and services in the most integrated setting— all of which has caused, and will continue to cause, Plaintiffs and the proposed Class irreparable harm. Am. Complt., ¶ 135. The right to services in the most integrated setting is a long-standing and well-established civil right of persons with disabilities.  The Plaintiffs filed their Complaint on November 30, 2022 and their Amended Complaint on March 3, 2023.  Plaintiffs should not have to endure a complete stay of discovery when a partial stay is reasonable and will not prejudice Defendants.

### CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court deny Defendants' Motion for a Stay.

DATED: MAY 30, 2023.

Respectfully submitted,

/s/Kirk W. Lowry
Kirk W. Lowry, ct27850
Legal Director
Kathleen M. Flaherty, ct19344
Executive Director
Connecticut Legal Rights Project
CVH-Beers Hall 2nd Floor
P.O. Box 351-Silver Street
Middletown, CT 06457
Phone (860) 262-5017
Fax (860) 262-5035
klowry@clrp.org
kflaherty@clrp.org


/s/Deborah Dorfman
Deborah Dorfman, (*Admitted Pro Hac Vice*)
Juris No. 442946
Executive Director/Attorney
Sheldon Toubman, ct08533
Litigation Attorney
Disability Rights Connecticut
75 Charter Oak Avenue. Suite 1-101
Hartford, CT 06106
Phone (860) 469-4463
Fax (860) 296-0055
deborah.dorfman@disrightsct.org
sheldon.toubman@disrightsct.org


## CERTIFICATION

I hereby certify that on May 30, 2023, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

/s/Kirk W. Lowry
Kirk W. Lowry

24