THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY DYOUS, ET AL., | : | CIVIL NO. 3:22-CV-01518-SVN |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| DEPARTMENT OF MENTAL HEALTH | : | |
| AND ADDICTION SERVICES, ET AL., | : | |
| *Defendants*. | : | JULY 31, 2024 |

**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
JOINT MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

When plaintiff aquittees asserted the affirmative defense of lack of capacity due to mental disease or defect, they admitted that they engaged in serious criminal conduct, including murder in one case, and negligent homicide in the other.  Because of plaintiffs' criminal conduct, § 17a-587 governs the temporary leave process through which plaintiffs become eligible to receive community-based treatment (TL process).  Also because of that criminal conduct, the TL process is "long deliberate, and cautious with many layers of risk assessment and review."  Ruot Decl., ¶ 7 (Doc. 94-2).

1. **Plaintiffs' reliance on *Olmstead* to assert they do not need to complete the TL process to assert an integration mandate claim is misplaced.**

Contrary to plaintiffs' assertion otherwise, plaintiffs are challenging § 17a-582 and their commitment status.  Pl. Opp., p. 3.  Relying on *Olmstead*, they insist that they have sufficiently alleged cognizable integration mandate claims because the trigger for such claims is not when the TL process is complete but "the moment that their treating psychiatrist reasonably determines" they are ready for community placement.  Pl. Opp., pp. 14, 37-40.  In other words, plaintiffs assert they can skip over the rest of the § 17a-587 TL process, and their entire opposition is based on this faulty premise.  Pl. Opp., pp. 14, 16, 19, 21, 22, 40.

Defendants agree that *Olmstead* stands for the proposition that the "by reason of plaintiffs' disabilities" requirement is satisfied when a plaintiff alleges facts supporting an integration mandate claim based on the state's preference to institutionalize mental health patients **due to cost concerns**.  Because, under those facts, the isolation is **unjustified** isolation "properly regarded as discrimination based on disability."[1]  *Olmstead v. L. C. by Zimring*, 527 U.S. 581, 597 (1999).  However, *Olmstead* does not hold that an integration mandate claim is cognizable **before** an acquittee completes a state's TL process or that the courts should interfere in that process.  *Id., passim*.  Nor does it hold that the TL process equates to unjustified isolation in violation of the integration mandate.  Plaintiffs try to expand *Olmstead* to include their claims but have not cited any legal authority applying *Olmstead* in such a manner that would support its application to the facts here.

For a cognizable Title II ADA claim, plaintiffs must allege facts showing "that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, **by reason of plaintiffs' disabilities**.[2]  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (cleaned up) (emphasis added).  Plaintiffs acknowledge this pleading requirement, but even here in their fourth attempt at a cognizable complaint, do not cite any factual allegations satisfying it.  Pl. Opp., p. 20-22.  Instead, they make conclusory assertions that they have sufficiently pleaded an integration mandated claim because a treating professional determined the most integrated

---

[1] Addressing defendant's argument that plaintiffs "encountered no discrimination "by reason of" their disabilities, the Court opined that dissimilar treatment exists where mental health patients are required to "relinquish participation in community life" to receive medical services whereas "persons without mental disabilities can receive the medical services they need without similar sacrifice." *Id*., at 598, 601.
[2] The standards for an ADA and a Section 504 claim are the same.  *Id*. Thus, only the term ADA is used herein.

setting for them is community-based mental health services. *Id.*, pp. 21-22.  However, they do not cite any legal authority holding that making such an allegation satisfies the 'by reason of' prong. *Id.*³

Plaintiffs' assertion that the ADA applies to them regardless of their status misses the mark.  Pl., Opp., pp. 20-21.  The issue here is not whether the ADA covers acquittees but whether they have alleged facts showing discrimination by reason of their disability.  They have not. Instead of asserting a claim based on their disability, they are attempting to use their mental disabilities as an end run around the TL process, which is tied to their criminal conduct.

### 2. Plaintiffs' cases are moot.

Plaintiffs misapply *Olmstead* to assert their claims are not moot because a psychiatrist determined they are ready for community-based treatment and are not receiving it.  Pl. Opp., pp. 14-19.  As discussed above, this is an erroneous assertion.  Plaintiffs cannot simply ignore that completion of the TL process, not just initiation of it, is a criterion to receive community-based services.  Accordingly, plaintiffs' integration mandate claims are not ripe until they have completed the TL process.  Only then would plaintiffs potentially have an integration mandate claim.⁴

For example,   Pl. Opp., pp. 5, 16.  . *Id.*, pp. 5, 16;

---

³ Plaintiffs go even further and assert that they do not need to show the State's treating professionals have determined that community-placement is appropriate but instead can "rely on a variety of forms of evidence." Pl. Opp., p. 39.  Under this novel view, an inmate could assert a cognizable integration mandate claim by alleging that a prison violates the integration mandate by failing to release him when a treatment professional opines the inmate could be treated outside of the prison.

⁴ For example, if after plaintiffs have completed the TL process DMHAS does not provide community-based services because it prefers to keep them institutionalized for cost-related reasons.

3

Krupa aff., Ex. A-C (Doc. 94-1).  Here again, Lindsay's assertion that his claims are ripe and are not moot because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Pl. Opp., pp. 5, 16, 19.

Wu asserts his claims are not moot ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Pl. Opp., p. 15.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *Id.*, p. 6.  And in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Nolan Suppl. Aff., ¶ 3.  Even if there was a brief wait time for ▮▮▮▮▮▮▮▮, a brief wait does not violate the integration mandate.[5]  *See Olmstead*, 527 at 606.

In addition, plaintiffs' reliance on *Olmstead* to assert that the conduct they complain of can reasonably be expected to repeat is misplaced.  Pl. Opp., pp. 16-17.  Unlike here, in *Olmstead* there was evidence of "multiple institutional placements" of plaintiffs.  *Olmstead*, 527 U.S. at 594 n.6.[6]  The remainder of plaintiffs' arguments supporting a repetition finding are argumentative and misplaced statements of counsel that the Court should not consider. *U.S. v. Roberts*, 660 F.3d 149, 158 (2d Cir. 2011) (statements of counsel are not evidence).

Further, plaintiffs have not alleged facts showing that Defendants voluntarily ceased the challenged conduct solely to defeat plaintiffs' claims.  Pl. Opp. 18.  Voluntary cessation applies when a defendant voluntarily discontinues the challenged conduct to prevent "resumption of the challenged conduct as soon as the case is dismissed."  *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021). It ensures that a party cannot evade judicial review by temporarily altering the conduct at issue.  Wu has not alleged any facts showing Defendants

---

[5] Wu does not allege precisely when Phase II overnights should have started.
[6] By relying on *Olmstead* here, impliedly ask the Court to assume they are likely to recidivate. Yet, at the same time they are asking the Court to curtail the safety informed TL process.

started his overnight TL to evade judicial review. His TL overnights started as a normal progression, not to evade judicial review. Pl. Opp., p. 6; Ruot aff., ¶ 17; and Nolan Suppl. Aff., ¶ 3.

### 3. Plaintiffs have not pleaded a cognizable denial of a reasonable modification claim.   Pl. Opp., pp. 22-36, 40

Plaintiffs argue that they have asserted cognizable discrimination claims because they have listed plausible reasonable modifications to the TL process. *Id.*, pp. 24-27. They suggest that if reasonable modifications are identified, the pleading requirements of *Henrietta* are satisfied, including the 'by reason of' requirement, by identifying a reasonable modification. Plaintiffs again do not cite any legal authority supporting this proposition. Because plaintiffs have again failed to allege cognizable discrimination claims, the Court need not consider plaintiffs' unpersuasive reasonable modification arguments. *Rodriguez by Rodriguez v. City of New York*, 197 F.3d 611, 619 n.6 (2d Cir. 1999) *cert. denied* 531 U.S. 864 (2000).

In addition, plaintiffs' argument regarding the lack of nexus between their disabilities and the reasonable modification is misplaced. Pl. Opp., pp. 26-27. Plaintiffs must show a nexus between the requested modification and their disabilities. *Rogers v. Roosevelt Union Free Sch. Dist.*, 553 F. App'x 88, 89 (2d Cir. 2014). The modification plaintiffs seek here is a more expedient and lenient § 17a-582 TL eligibility process. They ignore that the TL process applies to them because of their prior criminal conduct. There is no nexus between the requested modification of TL eligibility and the plaintiffs' mental disability.

### 4. Plaintiffs' request for increased provider capacity is misplaced because they are not entitled to receive any services that they are not already receiving.  Pl. Opp., pp. 27-36.

Plaintiffs do not explain how their increased provider capacity claim alleges a cognizable claim against Crego or the PSRB Defendants. Pl. Opp., pp. 27-36. Fundamentally, plaintiffs

have not demonstrated that they are entitled to receive community services and are unable to timely receive those services because of provider capacity issues. Here again, plaintiffs ignore the TL process as a valid criterion and rely on the *Olmstead* pleading standards without citing any legal authority supporting their conclusory argument that they can bring an increased provider capacity claim completely apart from a discrimination claim.

Plaintiffs' reliance on *Davis, Haddad, Doxzon, Price*, and *M.G.* is also misplaced. Pl. Opp. 30-33. None of these cases hold or even suggest that plaintiffs can ignore the TL process as a threshold for bringing an increased provider capacity claim. Instead, *Davis, Haddad, Doxzon and Price*, involved a defendant's objection to the requested modifications because of cost concerns or because they required a new or expanded program. *Davis v. Shah*, 821 F.3d 231, 241-42 (2d Cir. 2016) (restricted coverage of orthopedic footwear and compression socks limited to certain health conditions to save on costs); *Haddad v. Arnold*, 784 F. Supp. 2d 1284, 1304 (M.D. Fla. 2010) (refusal to provide Medicaid in-home services because of financial structure and because providing service would constitute a fundamental alteration because it would cost more). *Price v. Shibinette*, 2021 DNH 179 2021 U.S. Dist. LEXIS 224208 *22-36 (Dist. Of N.H) (Nov. 18, 2021) (denying motion to dismiss plaintiff's ADA violation claim regarding choices for independence waiver program because they sought to hold defendants liable for third-party conduct and the claim was a non-cognizable standard of care claim); *Doxzon v. Dept. of Human Services of Pa.*, Docket No. 1:20-CV-00236, 2020 U.S. Dist. LEXIS 124592, at *10, 24-31 (M.D. Pa. July 15, 2020) (finding likelihood of success on the merits where state failed to plan for transition from child welfare system to residential habilitation/housing services putting plaintiff at risk of institutionalization and rejecting defendant's arguments that defendant was not personally involved so not liable, that claim was a standard of care or level of benefits claim, and that allowing suit to go forward would render program unmanageable.); and *M.G. v. N.Y. State*

*Office of Mental Health*, 572 F. Sup. 3d 1, 3-4 (S.D.N.Y. 2021) (claim by former inmates and parolees held past their release dates or released and put into segregated community options, the discrimination claims survived a motion to dismiss because they sufficiently alleged that defendants controlled where they lived and unnecessarily placed them in segregated settings and/or failed to provide them with community-based housing and services). None of those facts are the facts here.

Plaintiffs' own allegations demonstrate that even their increased capacity claim is not about disability discrimination. TAC ¶¶ 15, 39(d), 86, 97, 98, 101, 103, 170(a), and Prayer for Relief 6(f). The "discriminatory eligibility criteria" that plaintiffs seek to address pertains to their § 53-13 status, which is not a protected status under the ADA.

Plaintiffs' methods of administration claims suffer from the same fundamental problem. Pl. Opp., pp. 36-37. The alleged discriminatory contracting criterion concerns plaintiffs' § 53-13 status. Plaintiffs have not alleged any facts showing that the contracts for the community health care providers allow discrimination based on mental disability nor have they pointed out how their methods of administration claims are cognizable against Crego or the PSRB Defendants.

**5. Plaintiffs have not requested a reasonable accommodation. Pl. Opp., p. 40**

Plaintiffs assert they requested a reasonable accommodation by requesting an increased provider capacity. Pl. Opp., p. 40. Plaintiffs have not shown how this aspect of their claim pertains to Crego or the PSRB Defendants. In addition, as discussed above, these plaintiffs have not shown that a lack of provider capacity is preventing them from receiving services that they are entitled to receive.

Moreover, the letter Wu and Lindsay rely on does not identify them or request a specific accommodation for either. Cardella Aff., Ex. A (Letter) (Doc. 86.2). Instead, it is wholesale attack on the PSRB system and a broad-brush effort by plaintiffs' attorneys to "reform the

criminal legal system in Connecticut." Letter, p. 2. Pl. Opp. p. 40. In addition, plaintiffs again have failed to cite any legal authority holding that their generic request is legally sufficient to qualify as a request for an accommodation under relevant disability law.

## **CONCLUSION**

For the foregoing reasons, the Court should overrule plaintiffs' objection and dismiss this case with prejudice.

        Respectfully submitted,
        DEFENDANTS,
        WILLIAM TONG
        ATTORNEY GENERAL

        DEFENDANTS,
        NANCY NAVARETTA and JOSE CREGO
        IN THEIR OFFICIAL CAPACITIES

BY: */s/ Shawn L. Rutchick*
     Shawn L. Rutchick
     Assistant Attorney General
     Federal Bar No. ct24866
     165 Capitol Avenue
     Hartford, CT 06106
     Tel: (860) 808-5210
     Fax: (860) 808-5385
     shawn.rutchick@ct.gov

     DEFENDANTS,
     MICHAEL PEPPER, JOHN BONETTI,
     MARK KIRSCHNER, CHERYL
     ABRAMS, WAKANA HIROTA, and
     RENESHA NICHOLS, IN THEIR
     OFFICIAL CAPACITIES

     */s/ Tanya DeMattia*
     Tanya DeMattia
     Assistant Attorney General
     Federal Bar No. ct14966
     165 Capitol Avenue
     Hartford, CT 06106
     Tel: (860) 808-5210
     Fax: (860) 808-5385
     tanya.demattia@ct.gov

        */s/ Alina Bricklin-Goldstein*
        Alina Bricklin-Goldstein
        Assistant Attorney General
        Federal Bar No. ct31266
        165 Capitol Avenue
        Hartford, CT 06106
        Tel: (860) 808-5210
        Fax: (860) 808-5385
        alina.bricklin-goldstein@ct.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2024, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        */s/ Shawn L. Rutchick*
        Shawn L. Rutchick
        Assistant Attorney General

## Exhibit A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY DYOUS, ET AL, *Plaintiff,* | : : : | CIVIL NO. 3:22-CV-01518-SVN |
| V. | : : | |
| DEPARTMENT OF MENTAL HEALTH, AND ADDICTION SERVICES, ET AL., *Defendants.* | : : : | JULY 25, 2024 |

### SUPPLEMENT TO AFFIDAVIT OF HEATHER NOLAN

I, Heather Nolan, having been sworn, depose and say:

1. I am over eighteen years of age and believe in the obligation of an oath.
2. The foregoing statement is based upon my personal knowledge.
3. I supplement my affidavit, dated June 6, 2024, as follows:

   7. I have reviewed WFH records regarding Plaintiff ■ and his records reveal the following:

   k. On May 20, 2024, the FRC approved the treatment team's request that ■ begin ■

1

_Heather Nolan_
Heather Nolan
Director of Social Services
Whiting Forensic Hospital

STATE OF CONNECTICUT	)
	)  ss. Middletown
COUNTY OF MIDDLESEX	)

Sworn and subscribed before me on this 26th day of July, 2024.

ANEISHA HAWTHORNE
Notary Public, Connecticut
My Commission Expires Dec. 31, 2024

_Aneisha Hawthorne_
Notary Public
Commissioner of the Superior Court

2